**United States District Court**
**District of Massachusetts**

```
                                  )
BARRY SCOTT TURKOWITZ and         )
BRYAN RICHARDSON                  )
        Plaintiff,                )
                                  )    Civil No.
        v.                        )    10-10634-NMG
                                  )
TOWN OF PROVINCETOWN,             )
WARREN TOBIAS, JEFF JARAN,        )
MICHAEL BARONE, ANTHONY BOVA,     )
THOMAS STEELE, MONICA HIMES, and  )
CARRIE LOPES,                     )
        Defendants.               )
                                  )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Barry Scott Turkowitz ("Turkowitz") and Bryan Richardson
("Richardson") (collectively, "plaintiffs") bring this action
against the Town of Provincetown ("the Town") and several of its
police officers. The allegations concern the defendant officers'
response to a noise complaint during an outdoor party that
plaintiffs were attending. Defendants now move for summary
judgment on those claims.

## I.    **Facts**

On the evening of July 14, 2007, plaintiff Turkowitz was
serving as a disc jockey for a birthday party at a residence
located at 4 Holway Avenue in Provincetown, Rhode Island.
Plaintiff Richardson had accompanied him.

The incident occurred when defendant police officers Michael

-1-

Barone, Anthony Bova, Monica Himes and Thomas Steele responded to a noise complaint at approximately 10 p.m. Defendant Steele had twice responded to noise complaints concerning the same residence earlier that evening. At the direction of defendant Officer Carrie Lopes, the shift supervisor at the time, Steele ordered the birthday party to be shut down. Plaintiff Turkowitz turned the music off and announced using his sound equipment that the party was being shut down.

The nature of that announcement is contested. According to plaintiffs, Turkowitz merely stated that the Provincetown police had asked him to shut off the music and that "[i]t's a shame as taxpayers we cannot have a private get-together in a private backyard." Defendants argue that the remarks were loud and inflammatory and "wound up" the crowd, creating a hazard for the police. Subsequently, Steele directed Officers Barone and Bova to arrest Turkowitz for disorderly conduct. The events that followed are also in dispute.

The plaintiffs claim that after arresting Turkowitz, Officer Bova grabbed the back of Turkowitz's head and slammed it into the side of the house, injuring his nose. Then Officers Bova and Barone pushed the hand-cuffed Turkowitz into a propane tank and Bova kicked him several times and stomped on his exposed foot. Defendants acknowledge that Turkowitz received a cut on his nose and bruises on his legs as a result of the encounter but Bova and

-2-

Barone claim that whatever force was used was a necessary reaction to Turkowitz's resisting arrest.

Plaintiffs claim that in response to the attack, Richardson approached Officers Steele and Himes to ask them why they were permitting this beating to occur. At that time, Officer Steele placed Richardson under arrest while Officer Himes confiscated his cane which Richardson used as a walking aid as a result of a prior back injury. Then both officers dragged Richardson to their police cruiser and slammed him into the trunk. Defendants acknowledge that Richardson was taken into protective custody but deny that Officer Himes was involved in the decision to arrest. Rather, Officer Steele reasonably understood that Richardson had made the inciteful announcements over the PA system and he alone put Richardson under arrest. Steele also observed that Richardson appeared to be intoxicated at the time of his arrest.

Officer Lopes arrived at the scene after the altercation began. Defendants claim that occurred after Turkowitz had been arrested but plaintiffs allege that she was in the front yard of the residence at the time that Steele authorized the arrest. She was also present at the police station during both plaintiffs' booking and interrupted that process in order to allow Richardson to be seen by paramedics.

Officer Warren Tobias served as Acting Chief of the Provincetown Police Department at the time of the incident. He

-3-

was not on duty that night, though plaintiffs allege that he coordinated an attempt to cover-up the episode.  Officer Jeff Jaran succeeded Tobias as Chief of Police but was not hired until 2008, after the subject incident.

## II.  **Procedural History**

On April 15, 2010 plaintiffs filed a complaint against the Town of Provincetown, Acting Chief of Police Warren Tobias, Chief of Police Jeff Jaran, Officers Barone, Bova, Lopes, Himes and Steele, and Mr. Edward Foley, who owned the residence where the party occurred.  Plaintiffs voluntarily dismissed their claim against Foley in December 2010.

The Complaint asserts ten counts against the remaining defendants.  Count I alleges that Officers Barone, Bova, Steele and Himes falsely arrested both Turkowitz and Richardson.  Count II alleges that Officers Barone, Bova, Steele and Himes committed assault and battery against Turkowitz, while Count III alleges the same against Richardson.  Count IV alleges that all officers committed intentional infliction of emotional distress upon Turkowitz.  Count V repeats that allegation on behalf of plaintiff Richardson.  Count VI alleges that all defendants violated several of plaintiffs' constitutional rights under 42 U.S.C. § 1983.  Count VII alleges Officers Barone, Bova, Himes and Steele violated plaintiffs' civil rights under the Massachusetts Civil Rights Act, Mass. Gen. Laws. c. 12, § 11I

-4-

("the MCRA"). Count VIII alleges that all defendants maliciously prosecuted Turkowitz. Count IX alleges that all defendants are liable for abuse of process against both plaintiffs. Count X alleges that the Town, Acting Chief Tobias and Chief Jaran are liable under a theory of municipal and supervisory liability pursuant to § 1983.

### III. **Motions for Summary Judgment filed by the Defendants**

The defendants have moved for partial summary judgment on all claims against them. Bova adopts the arguments made by his co-defendants but has moved separately for summary judgment on all claims made against him and has introduced additional evidence that he deems dispositive of the claims against him.

At the outset, the Court notes that plaintiffs have waived certain claims in their opposition to these pending motions for summary judgment. Specifically, they waive all claims against defendant Jeff Jaran, who was not yet Chief of Police at the time of the incident, and plaintiff Turkowitz's § 1983 claims based upon the denial of medical care. Furthermore, plaintiffs have consented to the dismissal of their claims for malicious prosecution (Count VIII) and abuse of process (Count IX).

Because the plaintiffs allege violations of § 1983 that affect the resolution of their state law claims, the Court begins its analysis there.

## A. Standard of Review

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary

-6-

judgment is appropriate if, after viewing the record in the non-
moving party's favor, the Court determines that no genuine issue
of material fact exists and that the moving party is entitled to
judgment as a matter of law.

### B.   Count VI: § 1983

The Federal Civil Rights Act, codified at 42 U.S.C. § 1983
and hereafter referred to as "§ 1983," provides individuals with
a cause of action against police officers who, while acting under
color of law, deprive them of a right or privilege secured by the
Constitution or laws of the United States. Cruz-Erazo v.
Rivera-Montanez, 212 F.3d 617, 621 (1st Cir. 2000). The
judicially engrafted doctrine of qualified immunity shields
police officers from § 1983 liability if the constitutional right
at issue was not "clearly established" at the time of the alleged
violation. Thus, for § 1983 liability to attach, a plaintiff
must establish both that 1) an officer acting under color of law
violated his constitutional right and 2) the right was clearly
established at the time of the violation.

Plaintiffs have alleged that all defendants violated their
civil rights with little analysis upon each individual
defendant's factual connection. It is "axiomatic" that the
liability of persons sued under § 1983 in their individual
capacities "must be gauged in terms of their own actions." Rogan
v. Menino, 175 F.3d 75, 77 (1st Cir. 1997). Defendants may only

-7-

be held jointly liable for their actions under § 1983 if the
defendants act together. Hall v. Ochs, 817 F.2d 920, 926 (1st
Cir. 1987).

### 1.    Unlawful Arrest

Defendant argues that any claim of unlawful arrest under
Count VI is barred by Heck v. Humphrey, 512 U.S. 477, 486-87
(1994).  Under Heck, if a claimed violation of § 1983 is based
upon alleged unlawful actions that would "necessarily imply" that
a prior conviction was invalid, the plaintiff must prove that the
conviction has been reversed, expunged, declared invalid by an
appropriate state tribunal or called into question by issuance of
a writ of habeas corpus by a federal court. 512 U.S. at 486-87.

Plaintiff Turkowitz was convicted by a state court jury of
both disorderly conduct and resisting arrest but only his
resisting arrest conviction was upheld on appeal.  Thus, the
question is whether finding for Turkowitz on his false arrest
claim would "necessarily imply" that his conviction for resisting
arrest would be invalid.

Convictions do not "necessarily imply" that the police had
probable cause to arrest for that crime at the time of the
arrest.  In this case, however, the evidence deemed sufficient to
convict beyond a reasonable doubt is the same information that
the defendant officers had at the time of arrest. See
Commonwealth v. Turkowitz, 941 N.E.2d 725 (Mass. App. Ct. 2011)

-8-

(finding evidence showing Turkowitz flailed arms, backed into a corner, and curled wrists while struggling with officers sufficient to sustain resisting arrest conviction). Because plaintiff must necessarily argue that those actions did not establish probable cause to arrest and doing so would impugn the validity of his conviction, the Heck decision applies and forecloses such an argument. Cf. Covington v. City of New York, 171 F.3d 117, 123 (2d Cir. 1999) ("[I]f the only evidence for conviction was obtained pursuant to an arrest, recovery in a civil case based on false arrest would necessarily impugn any conviction resulting from the use of that evidence.")

Plaintiffs contest the application of Heck on the grounds that a conviction for resisting arrest cannot bar a challenge to the grounds for the initial seizure, namely, the disorderly conduct. In making their claim, plaintiffs rely upon Commonwealth v. Grandison, 741 N.E.2d 25 (Mass. 2001), which noted that a resisting arrest conviction cannot rest on "postarrest conduct." That case is readily distinguishable, however, because the post-arrest conduct upon which the charge was partially based occurred at the police station, after the appellant had been transported from the scene of the arrest which he had also resisted. See id. at 35. Here, Turkowitz was arrested based solely upon his conduct at the party. Where an arrest is based upon a "single incident" the plaintiff must prove

-9-

that the arresting officer did not have probable cause to arrest him for any reason. Davis v. Schifone, 185 F. Supp. 2d 95, 100 (D. Mass. 2002).

Further, other sessions of this Court have not seen fit to bifurcate the events surrounding the seizure in the way that plaintiffs seek. See LaFrenier, 478 F. Supp. 2d at 136-137 (granting summary judgment because police could have arrested plaintiff for assault and battery, resisting arrest or disorderly conduct); Morrissey v. Town of Agawam, 2012 WL 2979075, *8 (D. Mass. July 12, 2012) (unlawful arrest claim barred where traffic violation charge thrown out but police had probable cause either for the traffic violation or for resisting arrest). While this argument has superficial appeal, the Court declines to perpetuate Turkowitz's claim based upon an incomplete description of his actions.

While Turkowitz's claim for unlawful arrest in violation of § 1983 is barred under Heck, Richardson's claim remains viable. Defendants claim that Richardson was only taken into custody, rather than arrested but they fail to explain that distinction. Considering that defendants do not dispute handcuffing Richardson, transporting him to the police station and jailing him, that assertion is insufficient to warrant summary judgment on his claim.

-10-

Accordingly, defendants' motion for summary judgment on plaintiffs' unlawful arrest claims under Count VI will be allowed as to plaintiff Turkowitz but denied as to plaintiff Richardson.

### 2. Denial of Medical Care

While plaintiff Turkowitz has waived any denial of medical care claims, plaintiff Richardson maintains that the police violated his due process rights by denying him medical treatment while he was in protective custody. Specifically, he claims that the police should have given him his prescription painkillers upon request and assisted him to use the bathroom after his back had seized and he lay on the floor of his cell.

A police officer who fails to provide adequate medical treatment to an individual injured during apprehension violates the Fourteenth Amendment if such inattention constitutes deliberate indifference to serious medical needs. Brace v. Massachusetts, 673 F. Supp. 2d 36, 40 (D. Mass. 2009). A medical need is "serious" if so diagnosed by a physician or if a lay person would easily recognize the need for urgent medical attention. Id. at 40-41 (citing Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990)). A showing of deliberate indifference, in this context, requires more than mere inadvertence or negligence. Rather, a plaintiff must establish that the officer was aware of a substantial risk of serious harm which he intentionally disregarded. Brace, 673 F. Supp. 2d at 41.

-11-

Stated another way, the plaintiff must prove that officers had a "culpable state of mind and intended wantonly to inflict pain." LaFrenier v. Kinirey, 478 F. Supp. 2d 126, 140 (D. Mass. 2007) (quoting DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991).

Here, plaintiff's claim suffers from two fatal defects. First, the actions described do not evince deliberate indifference. Officers Steele and Lopes interrupted Richardson's booking process in order to see paramedics upon his arrival at the police station because he had complained of back pain en route to the police station. While the paramedics recommended that he be taken to the hospital for further treatment, he declined. Those undisputed facts show that the police attempted to address Richardson's complaint of back pain. While Richardson later sought assistance to use the bathroom and access to his prescription pain medication, there are no proffered facts that would suggest that the officers were aware of a substantial risk of serious harm; after all, Richardson himself had declined to go to the hospital.

Second, Richardson fails to attribute the indifferent actions to the officers. At most, he claims that his partner, plaintiff Turkowitz, asked Officer Steele to help Richardson but was told to "shut up." Plaintiffs do not attribute the other denials to Steele and admit they cannot identify officers who allegedly mocked Richardon's condition.

-12-

Because plaintiffs have failed to demonstrate a violation of Richardson's constitutional rights, the Court declines to determine whether the right was "clearly established." Defendants are entitled to summary judgment with respect to the claim of denial of medical care in Count VI.

### 3.   **Excessive Force & Qualified Immunity**

Defendants move for partial summary judgment on Count VI with respect to plaintiffs' claims of violation of their right to security of the person, interpreted as excessive force claims. Specifically, they move for summary judgment on Turkowitz's claim against all defendants other than Barone and Bova, and on Richardson's claim against all defendants.  Plaintiffs argue that Officers Steele and Himes used excessive force against Richardson and all other defendants should be held liable because they either participated in the use of excessive force or conspired to cover it up.

Where, as here, a person contends that a police officer used excessive force in the context of a stop or arrest, the claim is analyzed under the Fourth Amendment's reasonableness standard. Graham v. Connor, 490 U.S. 386, 394-395 (1989).  While the reasonableness standard "is not capable of precise definition or mechanical application," its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect

-13-

posed an immediate threat to the safety of the officers or others
and whether he actively resisted arrest or attempted to evade
arrest by flight. Id. at 396.

With respect to plaintiff Turkowitz, it is undisputed that
Officers Barone and Bova effected his arrest. Bova argues that
his use of force was reasonable in light of the fact that
Turkowitz was resisting arrest but the plaintiff has raised
sufficient disputed facts to avoid summary judgment on this
ground. Plaintiff Turkowitz easily satisfies the three Graham
factors: disorderly conduct is hardly a severe crime, plaintiff
was unarmed and, in spite of allegedly "wiggling" his arms to
avoid being handcuffed, even defendant concedes that he made no
threatening gestures.

The extent to which any other individual defendant could be
liable depends upon his or her "own actions," and no other
defendants applied any force to Turkowitz. Instead, the theory
must be, as plaintiff alleges, that Officers Steele and Himes,
who were present at the time of Turkowitz's arrest, failed to
intervene to prevent the use of excessive force. It is settled
that an officer may be liable for failing to intervene to protect
an arrestee from the excessive use of force, provided that they
had a "realistic opportunity" to intervene. See Gaudreault v.
Municipality of Salem, 923 F.2d 203, 207 n.3 (1st Cir. 1990).
Viewing the facts in the light most favorable to the plaintiff,

-14-

Barone and Bova attacked Turkowitz for a long enough period to prompt Richardson to ask Steele to intervene. He has raised a genuine issue of material fact as to whether Officers Steele and Himes failed to intervene.

The remaining defendants cannot, however, be held liable for the use of excessive force. As discussed below, there is insufficient evidence of a conspiracy to violate either plaintiff's civil rights. Further, the evidence does not establish that Lopes was on scene with a reasonable opportunity to intervene. At best, plaintiff points to a witness who will testify that Lopes was in the front yard while Turkowitz was arrested in the backyard. Absent other witnesses to put Lopes closer to the event, the evidence does not raise a triable issue with respect to the liability of Officer Lopes on this count.

With respect to plaintiff Richardson, it is undisputed that Officer Steele initially took him into custody, with Himes present, and both defendants escorted Richardson to the police cruiser. Viewing the facts in the light most favorable to the plaintiff, defendants tightened their grip in response to Richardson's complaint about his back pain and slammed him into the trunk of the cruiser. Applying the Graham factors, Richardson posed no threat and committed no crime, so a jury could reasonably find that any amount of force was excessive under the circumstances.

Taking the facts in the light most favorable to the plaintiff, there is a genuine issue as to whether Barone and Bova could have intervened to prevent any potential excessive force against Richardson. The evidence demonstrates that both arrests occurred in the backyard and both plaintiffs were escorted to the same police cruiser to be transported to the station.

No other defendants may be held liable for excessive force against Richardson, however, because none of the others had contact with him. Likewise, plaintiffs have not raised a genuine issue as to whether Lopes had an opportunity to intervene in Richardson's case.

All the defendants raise qualified immunity as a defense to this claim but there is little doubt that the right to be free from excessive force is encompassed within Fourth Amendment protections. See Howe v. Town of North Andover, 854 F. Supp. 2d 131, 143 (D. Mass. 2012) (discussing case law regarding right to be free from excessive force).

Consistent with the above analysis, summary judgment will be denied with respect to Officers Barone, Bova, Steele and Himes, but allowed with respect to all other defendants.

### 4. Free Speech

Plaintiffs claim the defendant officers violated their First Amendment rights by arresting them based upon their exercise of their freedom of speech. With respect to Turkowitz, defendants

argue that his state court conviction establishes that the officers had probable cause to arrest him for disorderly conduct, thereby barring his retaliation claim upon that arrest and, in the alternative, that they deserve qualified immunity. With respect to Richardson, they argue that there was no expressive conduct sufficient to invoke the protection of the First Amendment.

A police officer may not base the decision to arrest upon conduct that is protected by the First Amendment. See Veiga v. McGee, 26 F.3d 1206, 1213 (1st Cir. 1994) (unlawful to detain based upon refusal to answer questions or challenge to police officers). Whether a plaintiff must establish that the police lacked probable cause in order to state a claim for retaliatory arrest remains an open question. Reichle v. Howards, 132 S.Ct. 2088, 2094 (2012). Perhaps as a result, the Supreme Court has recently stated that the right to be free from a retaliatory arrest that is also based upon probable cause has not been clearly established. Id. at 2097.

The Court has already determined that as a result of Heck, the plaintiff is foreclosed from challenging probable cause to arrest as part of his § 1983 claim. Therefore, at best, Turkowitz alleges a retaliatory arrest also based upon probable cause. Because this right has not been clearly established, defendants are entitled to qualified immunity on his claim.

-17-

Plaintiff Richardson's claim stands on different footing. Officers are not entitled to qualified immunity when making retaliatory arrests if they are not based upon probable cause. See Mullen v. Town of Falmouth, Civ. No. 88-2769, 1995 WL 464913 *4 (D. Mass. March 7, 1995) (finding law was clearly established in 1988 that police cannot make arrest solely in retaliation for comments to that officer); see also Norwell v. City of Cincinnati, 414 U.S. 14 (1973). Unlike plaintiff Turkowitz, Richardson's claim challenging the officers' probable cause to arrest him is not foreclosed by Heck. Based upon the facts in the record, plaintiffs have raised a genuine issue of material fact as to whether Richardson's arrest was based upon probable cause or was in retaliation for protected speech. If a jury credited the plaintiffs' account, Officers Steele and Himes arrested him solely because he questioned why they were not intervening in the other officers' attack on Turkowitz.

Accordingly, defendants' motion for summary judgment with respect to First Amendment violations under Count VI will be allowed as to plaintiff Turkowitz but denied as to plaintiff Richardson.

## 5.   Conspiracy Claims

Plaintiffs attempt to string together claims for civil rights violations against peripheral defendants by virtue of an allegation of "conspiracy." Defendants properly note that the

majority of the allegations regarding a concerted effort are related to plaintiffs' now-waived claim for malicious prosecution. Further, as defendants again note, there is no evidence of an agreement to violate plaintiffs' civil rights which is the keystone of a § 1983 conspiracy claim. See Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1987) (stating civil rights conspiracy requires an agreement to inflict a wrong). While a conspiracy may be established by implication through circumstantial evidence, summary judgment is warranted where the non-moving party relies solely on conclusory allegations and presents

> no evidence, either direct or circumstantial of an agreement among defendants from which a reasonable jury could [infer the existence of] a conspiracy among them.

Estate of Bennett v. Wainwright, 548 F.3d 155, 178 (1st Cir. 2008).

The only evidence adduced by plaintiffs to support their conspiracy claim suggests a cover-up rather than an agreement to perpetrate a violation. Plaintiffs' claim that Officer Himes intentionally failed to take a booking photo of Turkowitz's face and that Officer Tobias met with officers individually in order to ensure no inconsistencies with reports on the incident. In contrast, it is undisputed that Officer Himes objected to Steele's arrest of Richardson and that Officer Tobias was not on duty on the day of the incident. Even if plaintiffs' claims were

-19-

credited in the face of that undisputed evidence, they do not
support the existence of an agreement to target Turkowitz or
Richardson.

Accordingly, defendants summary judgment motion as to Count
VI with respect to any claims related to a conspiracy to violate
plaintiffs' civil rights will be allowed.

### C.   Count I: False Arrest

Defendants contend that Turkowitz's state law tort claim for
false arrest is barred under Heck v. Humphrey, 512 U.S. 477, 486-
87 (1994).  Heck, however, operates only to bar alleged civil
rights violations under § 1983. Id. at 487.  It does not prevent
tort claims based on state law. Cf. Leo v. Glodis, Civil No. 07-
11896, 2011 WL 883779 at *7 (D. Mass. March 11, 2011) (denying
motion to dismiss MCRA claims on basis of Heck because defendant
offered no argument why the prohibition should extend to state
civil rights claims).  Other state law doctrines, such as
collateral estoppel, might apply here to bar relitigation of a
state law claim but not the holding in Heck.

Because defendants are not entitled to summary judgment on
plaintiff's state-law count for false arrest, their motion to
that effect will be denied.

### D.   Counts II and III: Assault and Battery

Plaintiffs claim that Officers Barone, Bova, Himes and
Steele all committed assault and battery on both Turkowitz (Count

II) and Richardson (Count III), though they do not claim that they were both arrested by all four defendants. Rather, Barone and Bova arrested Turkowitz, while Steele and, to a lesser extent, Himes took Richardson into custody.

Under Massachusetts law, a police officer who intentionally causes harmful or offensive contact or attempts to do so during the course of an arrest is liable for the common law torts of assault and battery if he uses excessive force in effecting that arrest. Raiche v. Pietroski, 623 F.3d 30, 40 (1st Cir. 2010). Where, as here, a plaintiff brings both a § 1983 excessive force claim and state law claims for assault and battery, the Court's determination of the reasonableness of the force used with respect to the § 1983 claim controls its assault and battery analysis. Id.

As discussed supra, a genuine issue of material fact exists as to whether Barone and Bova used excessive force against Turkowitz and as to whether Steele and Himes used excessive force against Richardson. There is no evidence that Barone and Bova so much as touched Richardson, however, nor that Steele and Himes touched Turkowitz. Therefore, summary judgment will be allowed as to Steele and Himes on Count II and as to Barone and Bova on Count III.

## E.   Count IV and V: Intentional Infliction of Emotional Distress

To maintain a cause of action for intentional infliction of emotional distress ("IIED") under Massachusetts law, a plaintiff must establish that 1) the defendants intended to inflict emotional distress or that they knew or should have known that emotional distress was the likely result of their conduct, 2) defendants' conduct was extreme and outrageous beyond all bounds of decency, 3) defendants' actions were the cause of the plaintiff's distress and 4) the distress was so severe that no reasonable person could be expected to endure it. Agis v. Howard Johnson Co., 355 N.E.2d 315, 318-19 (Mass. 1976).

Defendants argue that they are entitled to summary judgment on those counts because their alleged conduct was not "extreme and outrageous" under the law. Considering the inherent subjectivity in an IIED claim, this is a close call but taking the facts in the light most favorable to the plaintiff there exists a genuine issue of material fact with respect to this claim sufficient to let it reach the jury. Plaintiff Turkowitz alleges that defendants Barone and Bova beat him severely while in handcuffs in spite of little resistance on his part. Plaintiff Richardson alleges that defendants Steele and Himes seized him for no reason whatsoever and refused a request to handcuff him differently because of his claimed back injury. Lopes allegedly denied him access to his painkillers.

Plaintiffs raise each IIED claim against all defendants, however, and the events giving rise to those possible claims involve only the arresting defendants, Barone and Bova, as to Count IV, and Steele and Himes, as to Count V.  Without more, those claims cannot stand because Massachusetts limits actions against police officers, other than actions for excessive force, to actions against officers who "took an active part" in the arrest or imprisonment.  See Hall v. Ochs, 817 F.2d 920, 926 (1st Cir. 1987) (interpreting M. G. L. ch. 263 § 3).

While Lopes may have been present at the scene, she did not participate in any of the purported outrageous activities.  The Town is not a cognizable defendant for an intentional tort.  Finally, plaintiffs admit that both Chiefs, Tobias and Jaran, took no active part at all.  Because the Court finds insufficient evidence to sustain a conspiracy to violate either plaintiff's civil rights, the IIEd allegation against the Chiefs is deficient.

Accordingly, defendants motion for summary judgment on Counts IV and V will be denied with respect to the four arresting officers mentioned above but allowed with respect to all other defendants.

### F.   Count VII: MCRA

Defendants move for summary judgment on all claimed violations of the Massachusetts Civil Rights Act ("the MCRA") on

-23-

the grounds that they are duplicative of the § 1983 claims and fail to allege deprivation by way of intimidation, coercion or threats. Plaintiffs counter that an arrest is instrinsically coercive, but go no further.

To establish his claim under the Massachusetts Civil Rights Act ("MCRA"), plaintiffs must show 1) defendant officers threatened, intimidated or coerced him 2) to prevent him from exercising a constitutional right. Spencer v. Roche, 755 F. Supp. 2d 250, 267 (D. Mass. 2010). The direct violation of a constitutional right does not establish a MCRA violation because "it is not an attempt to force someone to do something the person is not lawfully required to do." Columbus v. Biggio, 76 F. Supp. 2d 43, 54 (D. Mass. 1999) (quoting Swanset Dev. Corp. v. City of Taunton, 668 N.E.2d 333, 338 (Mass. 1996)); see also Gallagher v. Commonwealth, No. 00-11859-RWZ, 2002 WL 924243, at *3 (D. Mass. March 11, 2002) ("The use of force is not, in itself, coercive within the meaning of the act unless such force is inflicted in order to achieve some further purpose.").

Plaintiffs claim that their arrest physically coerced them into foregoing both the exercise of their Fourth Amendment rights to be free from unreasonable seizure and their First Amendment rights to free speech. Their first theory is readily dismissed because it conflates the two MCRA requirements. Plaintiffs' seizure and arrest cannot satisfy both the "coercion" and

-24-

"violation" elements absent some evidence that the initial force was intended to coerce them into doing something. Gallagher, 2002 WL 924243, at *3 (explaining that "the constitutional violation itself cannot also serve as the prerequisite threats, intimidation or coercion" under the MCRA).

Plaintiffs' second theory is equally deficient. At best the civil rights violations here flow from an impermissible retaliatory arrest rather than an arrest intended to coerce either Turkowitz or Richardson from further exercise of their rights. Plaintiffs do not allege that the police seized Turkowitz in order to prevent him from making further statements over the PA system. Rather, they claim the police were motivated by the original statement and that Turkowitz turned off the system immediately thereafter. That is distinct from a situation where the plaintiffs were previously warned not to do something and arrested when they disregarded the warning. Cf. Sarvis v. Boston Safe Deposist and Trust Co., 711 N.E.2d 911, 918 (Mass. 1999) (arrest after threat of arrest was "instrinically coercive").

Accordingly, plaintiffs' MCRA claim fails as a matter of law and, therefore, all of the defendants are entitled to summary judgment on Count VII.

## G.   Count X: Municipal and Supervisory Liability based upon § 1983

Plaintiffs claim that the Town and Acting Chief of Police Tobias are liable for the defendant officers' actions under a theory of municipal and supervisory liability based upon failure to train and failure to supervise, respectively. In the alternative, they argue that the Town and the Acting Chief maintained a policy or custom of inadequately investigating instances of misconduct. The defendants respond that the evidence does not reveal a genuine issue of material fact in this area and the Court agrees.

In order to sustain a claim of municipal liability based upon failure to train or supervisory liability premised upon § 1983 a plaintiff must adduce evidence of "deliberate indifference." See Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) (failure to train); Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 93-94 (1st Cir. 1994) (failure to supervise). In order to prove that a municipality acted with deliberate indifference (or failed to act at all), a plaintiff must show that the municipality "disregarded a known or obvious" risk, which is ordinarily demonstrated by adducing a pattern of similar constitutional violations by untrained employees. Id. at 1360. In such cases, a municipality's inaction is the functional equivalent of an actual decision to violate the Constitution. Id.

-26-

Plaintiffs have failed to meet the high hurdle established by the deliberate indifference standard. The only notice they attribute to the Town is Officer Bova's allegedly incorrect answer on a multiple-choice test relating to the proper response to a hypothetical arrestee. As defendants point out, there is no evidence of civilian complaints based upon false arrest or excessive force against Officer Bova (or Officers Barone, Himes or Steele). This falls far short of the pattern of similar constitutional violations demanded by the standard.[1]

The same defect is fatal to plaintiffs' alternative claim that Chief Tobias' policy or custom of failing to investigate such incidents caused their harm. They have not identified any other instances of failure to investigate. Even assuming that there is adequate proof in the record to show that the defendants failed to investigate adequately plaintiffs' complaints regarding this incident, such a failure did not cause the incident. Cf. Kibbe v. Springfield, 777 F.2d 801, 809 n.7 (1st Cir. 1985) (stating apparently sloppy post-shooting investigation insufficient to demonstrate a causal link).

---

[1] While it is possible to establish deliberate indifference on the basis of a single incident if the failure would lead to a "highly predictable consequence" that is "patently obvious," see Connick, 131 S. Ct. at 1360, to date such theories have been recognized only in cases involving deadly force. See Sonia v. Town of Brookline, Civ. No. 11-10666. This is not such a case.

Accordingly, even making all inferences in the non-movant's favor there is no genuine issue of material fact with respect to either the Town's or Tobias' "deliberate indifference" toward plaintiffs' constitutional rights. The defendants' motion for summary judgment will be allowed with respect to Count X.

## IV. **Motion for Preservation for Video Testimony**

Plaintiffs also object to the magistrate judge's denial of their request to take a video deposition of a bystander who will likely be unavailable for trial. Their objection is in the form of a motion which defendants oppose on the grounds that it was untimely because the plaintiffs had previously sought and obtained two extensions of the discovery period to take other depositions (and made no mention of the subject witness at that time).

Because defendants have had notice of the percipient witness's testimony since 2009, the Court will permit plaintiffs to take a short video deposition of the witness at a mutually agreeable time and place, provided that direct examination shall not exceed two hours. Accordingly, plaintiffs' motion will be allowed.

### ORDER

In accordance with the foregoing,

1)   the summary judgment motion filed by defendant Bova (Docket No. 78) is **DENIED**;

-28-

2) the partial summary judgment motion filed by defendants
Barone, Bova, Steele, Himes, Lopes, Tobias, Jaran and
the Town of Provincetown (Docket No. 74) is **ALLOWED, in
part, and DENIED, in part**, as follows:

   a) with respect to defendants Lopes, Jaran, Tobias
   and the Town of Provincetown, **ALLOWED**;

   b) with respect to all defendants as to Counts VII,
   VIII, IX, and X, **ALLOWED**;

   c) with respect to § 1983 claims based upon theories
   of denial of medical care and conspiracy in Count
   VI as to both plaintiffs, **ALLOWED**, but with
   respect to claims based upon theories of excessive
   force in Count VI, **DENIED**;

   d) with respect to § 1983 claims based upon theories
   of unlawful arrest and free speech in Count VI as
   to plaintiff Turkowitz, **ALLOWED**, but as to
   plaintiff Richardson, **DENIED**;

   e) with respect to defendants Barone and Bova as to
   Counts III and V, **ALLOWED**, but as to Counts I, II,
   IV and VI, **DENIED**;

   f) with respect to defendants Steele and Himes as to
   Counts II and IV, **ALLOWED**, but as to Counts I,
   III, V and VI, **DENIED**; and

3) plaintiffs' motion to overrule the magistrate judge's
order (Docket No. 70) is **ALLOWED**. Plaintiffs will be
allowed to depose Mr. Comerford at a mutually agreeable
time and place, direct examination not to exceed two
hours and costs of expedited copy to be borne by
plaintiffs.

   Having made these rulings the following counts against the
following defendants remain to be tried:

1) Count I, alleging state-law false arrest of both
plaintiffs, remains as to defendants Barone, Bova,
Steele and Himes;

2) Count II, alleging assault and battery of plaintiff
Turkowitz, remains as to defendants Barone and Bova;

-29-

3)    Count III, alleging assault and battery of plaintiff Richardson, remains as to defendants Steele and Himes;

4)    Count IV, alleging intentional infliction of emotional distress as to plaintiff Turkowitz, remains as to defendants Barone and Bova;

5)    Count V, alleging intentional infliction of emotional distress as to plaintiff Richardson, remains as to defendants Steele and Himes; and

6)    Count VI, alleging civil rights violations based upon § 1983, remains against defendants Barone, Bova, Steele and Himes on behalf of both plaintiffs on the claim of excessive force, and on behalf of plaintiff Richardson, also on claims of unlawful arrest and free speech.

**So ordered**.

_Nathaniel M. Gorton_
Nathaniel M. Gorton
United States District Judge

Dated October 26, 2012

-30-